**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Jesus E. Anaya (M42363), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 15445 |
| v. | ) | |
| | ) | Hon. Thomas M. Durkin |
| Vaughn E. Russell, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case under 42 U.S.C. § 1983 concerns Illinois prisoner Jesus E. Anaya's contention that he was wrongfully placed on suicide watch (a/k/a crisis watch) at the Stateville Correctional Center for three days in September 2022 where, he says, he experienced unconstitutional living conditions. *See* Dkt. 14, 15. Correctional Officer Vaughn Russell allegedly "fabricated" the disciplinary report that precipitated a mental health administrator's—Brian Page, Psy. D.— decision to place Anaya on crisis watch, and Page allegedly was responsible for the conditions Anaya experienced. Defendants Russell and Page deny the allegations and have moved for summary judgment. Dkt. 70. For the following reasons, the motion is granted.

**Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The procedures set out in Local Rule 56.1 "serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). Local Rule 56.1 requires the moving party to submit a motion, supporting memorandum of law, and statement of material facts accompanied by cited evidentiary material. N.D. Ill. L.R. 56.1 (a), (d). The opposing

party then must respond, separately, to the moving party's motion and statement of facts as set out in N.D. Ill. L.R. 56.1(b), (e).

Defendants provided Anaya with a "Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment," explaining the procedures for opposing summary judgment and specifying that he must "file, as separate documents" a response to the defendants' statement of facts, a statement of additional facts, evidentiary material, and a memorandum of law. Dkt. 73. In response, Anaya filed two documents: (1) a 3-page document titled "Plaintiff's Response to Defendants' Motion for Summary Judgment" in which he summarized his arguments in opposition to summary judgment, Dkt. 74; and (2) a 34-page Memorandum of Law, Dkt. 75.[1] Anaya organized his Memorandum of Law in numbered paragraphs that correspond to the headings in Defendants' Memorandum of Law. *Compare* Dkt. 75 *with* Dkt. 72. Anaya did not, however, submit a separate response to Defendants' Local Rule 56.1(d) Statement of Material Facts. The Court therefore deems Defendants' facts admitted. *See* N.D. Ill. L.R. 56.1(e)(3); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) (crediting defendant's facts where plaintiff did not respond to defendant's L.R. 56.1 statement of facts); *Smith v. Cipolla*, No. 23-2085, 2024 WL 5102485, at *1 (7th Cir. Dec. 13, 2024) ("Because [the plaintiff] failed to respond to the defendants' statement of facts, the judge appropriately exercised his discretion to treat the defendants' facts as admitted.").

Anaya also did not submit a separate statement of additional facts, including additional facts in his Memorandum of Law instead. *See* Dkt. 75. The Court could disregard Anaya's additional facts for lack of compliance with Local Rule 56.1. *See Kreg Therapeutics, Inc. v.*

---

[1] The documents at Dkt. 76 and 77 appear to be duplicates of Dkt. 74 and 75.

*VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (explaining that district court may require strict compliance with Local Rule 56.1 from all parties). That said, some (but not all) of Anaya's additional facts concern matters to which he could testify based on his personal knowledge or reference medical records that accompany his brief. The Court therefore will consider facts identified in Anaya's Memorandum of Law so long as the facts are material and admissible. *See Adams v. Falkner*, No. 18 C 8223, 2021 WL 2681891, at *1 (N.D. Ill. June 30, 2021) (discussing discretion to overlook noncompliance with local rules).

## BACKGROUND

Illinois prisoner Jesus E. Anaya was incarcerated at the Stateville Correctional Center in September 2022. *See* Dkt. 71, Defs. L.R. 56.1 Stmt. of Material Facts (DSOF) ¶ 4. On September 27, 2022, he was taken to the Healthcare Unit for treatment of an injured toe. DSOF ¶ 5. After he was seen by a nurse, he began talking to another inmate and did not stop when a correctional officer told him to "hurry up." DSOF ¶¶ 6, 7. The officer then told Anaya to "cuff up" and escorted Anaya to the segregation unit, where Anaya remained for approximately five minutes before he was returned to the Healthcare Unit. DSOF ¶¶ 8, 9.

Nurse Oluwasola completed a report at 12:20 p.m. in which she indicated that Anaya had "swallowed unauthorized medication (Robaxin)." DSOF ¶ 10. Oluwasola recommended that Anaya be transferred to "Saint Joseph ER." *Id*.

At 12:30 p.m. that same day, Correctional Officer Russell wrote a disciplinary report about the event. DSOF ¶ 14. The report stated, in pertinent part:

> On Tuesday, Sept. 27th 2022 at approximately 11:35A this C/O ordered individual in custody Anaya #M42363 to exit the HCU to be escorted to his unit. Anaya refused, was standing near bullpen #2 when this C/O witnessed individual in custody Haggard #Y54033 who was secured in bullpen #2 give Anaya a handful of medicine. Anaya

3

was immediately ordered to give up the medication which was prescribed to Haggard. Anaya then swallowed the medication ID as methocarbamol 750 mg.

DSOF ¶ 15 (citing Ex. 4 to DSOF) (cleaned up).

Anaya was taken to Saint Joseph Hospital at 1:20 p.m. DSOF ¶ 11. Medical records submitted by Anaya show that Dr. V. Bommiasamy approved the transfer, noting the reason for the transfer as "[illegible] suicidal attempt by consuming 10 Robaxin 750 mg[.]" Dkt. 75, pg. 23. A report titled "Evaluation of Suicide Potential," however, reflects that Anaya responded "No" to each question on the form and reported that he had "never attempted" suicide. *Id.*, pg. 24. In addition, medical records from Amita Health (St. Joseph Hospital) in Joliet, Illinois reflect that Anaya exhibited "no respiratory distress," "converse[d] calmly" and was "cooperative." *Id.*, pg. 27. Toxicology screenings came back negative for benzodiazepines, cocaine, cannabinoids, salicylate, and acetaminophen. *Id.*

Anaya returned to Stateville at 8:10 p.m. and was placed on crisis watch. DSOF ¶¶ 13, 17, 24. Defendant Page attested that Nurse Andrews called him and told him that Anaya had attempted to overdose on another inmate's medication, was taken to an outside hospital, and she (Andrews) was concerned that Anaya was suicidal. DSOF ¶ 16. Andrews did not tell Page that Anaya had his stomach pumped. DSOF ¶ 22. Page authorized Anaya's placement on crisis watch based solely on the information provided by Andrews. DSOF ¶ 17. Page did not review any documents, such as the disciplinary report written by Russell, before authorizing crisis watch for Anaya. DSOF ¶ 18. Page also did not speak with Anaya. DSOF ¶ 27. According to Page, crisis watch is used at the healthcare provider's discretion to keep inmates safe if they are a suicide risk. DSOF ¶¶ 20, 21.

Anaya was on crisis watch from the night of September 27, 2022, to September 30, 2022. DSOF ¶ 28. While on crisis watch, he was allowed to wear only a smock. DSOF ¶ 25. In addition,

he says that he was not given soap to wash his hands and had to eat meals with his bare hands. *Id.* He did not have a toothbrush or toothpaste. *Id.* The "light never went out," he was not allowed to shower, and he received no time outside his cell. *Id.* Anaya did not complain to anyone about the conditions. DSOF ¶ 26. He sustained no physical injuries as a result of the conditions and never saw a doctor for the "mental turmoil" that, he says, he experienced as a result of being placed on crisis watch. DSOF ¶¶ 29, 31, 32.

Anaya was transferred from Stateville to Hill Correctional Center shortly after his release from crisis watch. *See* DSOF ¶ 33. On October 21, 2022, he submitted Grievance No. 22-10-255 directly to the Administrative Review Board (ARB). *Id.* At the time he submitted the grievance, Anaya was serving a 60-day term of segregation as a result of the disciplinary report written by Russell. *See* Dkt. 14, pg. 9, 10; Dkt. 71-7, Ex. 7 to DSOF.

Under "Nature of grievance," Anaya placed an X next to "Staff Conduct" and "Disciplinary Report." Dkt. 71-7, Ex. 7 to DSOF. He identified the disciplinary report as the 9-27-2022 report issued at Stateville. *Id.* Anaya explained in the  body of the grievance that Defendant Russell reported that he saw Anaya swallow a handful of pills that Anaya received from inmate Haggard. *Id.* Anaya denied taking any pills. *Id.* He also asserted that Defendant Russell "was nowhere near me in the healthcare unit" and "there should be no way possible that I was found guilty of" trading or trafficking, drugs and drug paraphernalia, and disobeying a direct order. *Id.* He asked for the charges to be reversed and to be "released from segregation immediately." *Id.*

Anaya also grieved that he was taken to Saint Joseph Hospital where testing and observation showed "nothing [] wrong." *Id.* Even so, Anaya explained, he was placed on suicide watch and put in a cell wearing only a smock. *Id.* He was told that he "was on suicide watch

5

because staff . . . claim[ed] that pills were pumped out of [his] stomach at the outside hospital." *Id.*

He denied being suicidal and asserted that "staff" were trying to "justify the fact that they abused

their authority, put me on suicide watch and stop[ped] my transfer on September 28, 2022 without

a valid reason." *Id.* He also pointed out that "nowhere in my disciplinary report does it say that I

attempted to commit suicide." *Id.* The ARB denied the grievance, finding that the disciplinary

proceedings did not violate due process and that "staff misconduct cannot be substantiated." *Id.*

This lawsuit followed. The allegations of the operative complaint largely track the narrative

of Grievance No. 22-10-255. However, Anaya added in the operative complaint that, while on

crisis watch, he was not given soap to wash his hands, had to eat with his "bare hands," was not

allowed to shower, was not given a toothbrush or toothpaste, and "the light never went out the

entire time." Dkt. 14, pg. 7-8. He also appears to have added during his deposition that he was not

allowed to shower and was not allowed out of his cell. *See* DSOF ¶ 25. Anaya identified Defendant

Page as the person who "put me on suicide watch by lying and stating that my stomach was pumped

at Amita Saint Joseph Hospital[.]" Dkt. 14, pg. 9. Anaya requested compensatory damages for

"everyday that [he] was given in segregation, which was 60 days" and for "everyday that [he] did

on suicide watch, which was 3 days." *Id.*, pg. 10.

Based on Anaya's allegations, the Court allowed a due process claim to proceed against

Defendants Russell and Page stemming from Anaya's placement on crisis watch, explaining that

"[t]he constitution . . . generally[] offers no protection from transfers to discretionary

segregation—that is, segregation imposed for administrative, protective, or investigative

purposes." Dkt. 15, pg. 3. But based on the "arguably . . . harsh" conditions alleged by Anaya, the

Court found that he had said enough to proceed past screening on a due process claim. *Id.* The

Court employed similar reasoning in allowing an Eighth Amendment conditions claim against Page to the extent the alleged facts suggested Page might have been responsible for the conditions on crisis watch. *Id.* The Court dismissed all other claims against all other defendants, including a due process claim stemming from the 60 days in segregation Anaya received as a result of the disciplinary ticket written by Russell. *Id.*, pg. 4.

Before the Court is Defendants Russell's and Page's motion for summary judgment on the claims that survived screening: (1) a due process claim against Defendant Russell to the extent the disciplinary report written by Russell caused Anaya's placement on crisis watch; (2) a due process claim against Defendant Page because, Anaya alleged, Page "put me on suicide watch by lying and stating that my stomach was pumped" at Saint Joseph Hospital; and (3) an Eighth Amendment conditions claim against Page, stemming from the conditions Anaya experienced on crisis watch.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

The Court considers relevant, properly supported evidence "in the light most favorable to the non-moving party." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted). The Court draws all reasonable inferences in the non-moving party's favor, but not

7

speculative inferences. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

Defendants argue that they are entitled to summary judgment for several reasons that can broadly be categorized as: (1) Anaya did not exhaust administrative remedies; (2) Anaya cannot show that Defendants were responsible for a due process violation stemming from Anaya's placement on crisis watch; and (3) Anaya cannot establish liability against the Defendants stemming from the conditions in his crisis watch cell. Dkt. 72.

### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means that, if a prison has an administrative grievance system through which a prisoner can seek to correct a problem, the prisoner must use that system before filing a claim in federal court. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). The PLRA's exhaustion requirement is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Court cannot resolve a claim on the merits if the claim was not first pursued through the prison's grievance system. *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535-36 (7th Cir. 1999) ("the court must not proceed to render a substantive decision until it has first considered § 1997e(a)"); *see also Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022)

("a suit filed before the prisoner has exhausted these remedies must be dismissed") (cleaned up). The burden of proof is on the defendant to demonstrate that the prisoner failed to exhaust administrative remedies. *Miles*, 42 F.4th at 780.

There is no dispute that Anaya filed a grievance about the events of September 27, 2022, and that he timely submitted the grievance to the ARB.[2] Defendants' exhaustion defense therefore focuses on whether the narrative in Grievance No. 22-10-255 was sufficient to put prison officials on notice of the claims that survived screening.

"The PLRA does not specify what a prisoner must do to exhaust his administrative remedies." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). "Those requirements are found in the law establishing the relevant administrative remedies." *Id.* Thus, for present purposes, the Court looks to Illinois law.

The Illinois Administrative Code specifies that a grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If a prisoner does not know the names of the individuals involved in the grieved conduct, the prisoner "must include as much descriptive information about the individual as possible." *Id.* Exhaustion requirements of this type "protect[] the prison's administrative authority by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court." *Schillinger*, 954 F.3d at 995. Technical perfection is not required, though; a prisoner satisfies the exhaustion requirement when a grievance "provides notice to the prison of the nature of the wrong for which redress is sought." *Id.*

---

[2] Anaya testified at his deposition that Grievance No. 22-10-255 was the only grievance he submitted to the ARB about the events of September 27, 2022. DSOF ¶ 41.

Anaya did not exhaust a due process claim against Defendant Russell stemming from his placement on crisis watch. Grievance No. 22-10-255 mentions Russell by name and complains that the disciplinary report written by Russell caused Anaya to (1) be found guilty of trading or trafficking, drugs and drug paraphernalia, and trading or trafficking; and (2) be subjected to a term of punitive segregation that was ongoing when Anaya submitted the grievance. *See* Dkt. 71-7. Anaya denied the conduct and sought to have the charges reversed. *Id.* Anaya also mentioned that "staff . . . abused their authority, put me on suicide watch and stop[ped] my transfer on September 28, 2022, without a valid reason," but he attributed his placement on crisis watch to "staff" falsely "claiming that pills were pumped out of my stomach at the outside hospital." *Id.*

Nothing in Grievance No. 22-10-255 suggests that Russell was present at Saint Joseph Hospital, would have known about events at the hospital, was present when Anaya returned from the hospital, or was present when Anaya was placed on crisis watch. Rather, Anaya specified in the grievance that "nowhere in my disciplinary report does it say that I attempted to commit suicide." *Id.* Consequently, the information in the grievance could not have put prison officials on notice of a potential lawsuit against Russell stemming from Anaya's placement on crisis watch. The due process claim against Russell must be dismissed.

The due process claim against Defendant Page is a closer call. Anaya did not name Page in Grievance No. 22-10-255 and attributed the crisis-watch decision to "staff," not a doctor or mental health professional. Dkt. 71-1. The grievance, however, unambiguously asserted that Anaya was put on crisis watch without justification. He also identified the date he was placed on crisis watch and the circumstances surrounding the decision.

The narrative in Grievance No. 22-10-255 left no doubt that Anaya was complaining about the decision to place him on crisis watch by unidentified prison personnel. The information provided by Anaya would have allowed prison officials to identify Page as the person responsible for the decision. The Court therefore finds that Anaya exhausted his due process claim against Page. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("a grievant is not required to know the name of the prison employee whom he's complaining about—often he will not know the employee's name—and so it is enough if he 'include[s] as much descriptive information about the individual as possible[.]'"); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("it would be unreasonable to expect that . . . an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision").

Anaya did not exhaust an Eighth Amendment conditions claim against Defendant Page or any other defendant. Anaya alleged in the operative complaint that he was subjected to the following conditions on crisis watch: he was allowed to wear only a smock, was not given soap to wash his hands, had to eat meals with his bare hands, did not have a toothbrush or toothpaste, and the "light never went out." He later added that he was not allowed to shower or to leave his cell. But Grievance No. 22-10-255 did not mention the vast majority of these conditions; it mentioned only that Anaya was given a smock to wear on crisis watch. *Compare* Dkt 71-7 *with* Dkt. 14. Consequently, Anaya did not present facts in the grievance that would have put prison officials on notice that the conditions he experienced on crisis watch might have violated the Eighth Amendment, so he did not exhaust administrative remedies concerning the allegedly unconstitutional conditions. The Eighth Amendment claim must be dismissed.

11

For the sake of completeness, the Court addresses Defendants' argument that Anaya was required to identify, in his grievance, the adverse conditions on crisis watch to exhaust his due process claim. *See* Dkt. 72, pg. 6. Defendants cite no authority supporting their contention that a grievance must contain facts implicating every element of a federal claim to put prison officials on notice of the claim. In this Court's opinion, it is enough that Anaya expressly complained to prison officials that he was wrongfully placed on crisis watch, he did not receive a hearing before the placement, and the alleged facts suggested that there was no justification for the placement. It is true that the purported lack of justification along with the alleged conditions allowed the claim to proceed past screening, but the sufficiency of a federal complaint is subject to a different standard than is required to put prison officials on notice of a prisoner's grievance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that pleading must contain enough facts to show "more than a sheer possibility that a defendant acted unlawfully"); *Schillinger*, 954 F.3d at 995 (explaining that prisoner satisfies exhaustion requirement when grievance "provides notice to the prison of the nature of the wrong for which redress is sought").

## B.    Due Process

Because Anaya failed to exhaust administrative remedies on two of the three claims that survived screening, just one claim remains: a due process claim against Defendant Page. But undisputed evidence shows that Page's decision to place Anaya on crisis watch did not violate the Constitution.

The Constitution "does not create an interest in avoiding transfer within a correctional facility." *Townsend v. Fuchs*, 522 F.3d 765, 770-71 (7th Cir. 2008). Thus, the Constitution offers prisoners limited protection from transfers to disciplinary segregation and, generally, offers no

protection from transfers "to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Id.* at 771. This means that a prisoner's placement on crisis watch for a short duration, even when not necessary, usually is not enough to support a claim under section 1983. *See id.* (collecting cases); *Span v. Melvin*, No. 18-1078, 2018 WL 2944152, at *2 (C.D. Ill. June 12, 2018) (collecting cases).

"When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013). Both the duration *and* the conditions in segregation must be considered in the due process analysis. *Jackson v. Anastasio*, 150 F.4th 851, 858-59 (7th Cir. 2024).

The undisputed facts establish that Anaya was subject to conditions on crisis watch that were more restrictive than he experienced in the general prison population. The conditions—*i.e.*, wearing a smock, having to eat meals with his hands and having no soap to wash his hands, no out-of-cell time, no shower, and constant lighting—undoubtedly were unpleasant. But the conditions were less harsh than conditions that have been found to be "disgusting" or "deplorable" enough to trigger due process concerns. *See, e.g., Wilkinson v. Austin*, 545 U.S. at 224 (concluding that liberty interest implicated where prisoners confined to segregation for indefinite duration, no conversation permitted, almost all human contact prohibited, only indoor exercise allowed one hour per day, 24-hour lighting, and placement disqualified prisoners for parole consideration); *Jackson*, 150 F.4th at 860 (concluding that liberty interest implicated where prisoner confined for

13

three months in cell with feces and urine on walls, constant noise, water contaminated with bacteria that causes Legionnaire's disease, roaches, and mice). Anaya also was subject to the conditions for just three days (though likely less than 72 hours), which is simply not long enough to establish a liberty interest that would require procedural protections before his transfer to crisis watch. *See, e.g., Earl*, 718 F.3d at 691 (five days on suicide is too short a time to trigger due-process protections). Far more egregious conditions for a far longer period—measured in months, not days—are necessary to trigger procedural protections before a prisoner may be transferred to a more restrictive form of confinement. *See Jackson*, 150 F.4th at 858-59 (collecting cases).

Any suggestion that Defendant Page "abused his discretion" when he authorized Anaya's placement on crisis watch is not supported by the record. Page attested under oath that he exercised his medical judgment, based on information provided by a nurse, when he authorized Anaya's placement on crisis watch. *See* Dkt. 71-6. Anaya's assertion that prison "staff" told him he was placed on suicide watch because he had his stomach pumped is not enough to create a disputed issue of fact challenging Page's justification for authorizing crisis watch. *See Washington Cnty. Water Co., Inc. v. City of Sparta*, 77 F.4th 519, 529 (7th Cir. 2023) ("inadmissible hearsay evidence does not create a factual dispute at summary judgment"). Similarly, any suggestion that the disciplinary report written by Defendant Russell *caused* Anaya to be placed on suicide watch is unsupported insofar as Page attested that he did not consult the report, and Anaya produced no admissible evidence to the contrary. *See Whitaker v. Dempsey*, 144 F.4th 908, 921 (7th Cir. 2025) (explaining that mere speculation cannot defeat summary judgment).

Given the evidence before the Court, a reasonable jury could not return a verdict in Anaya's favor on the due process claim. Page therefore is entitled to summary judgment on the claim.

14

## Conclusion

The gist of Anaya's argument in opposition to summary judgment is his disagreement with Page's decision to authorize crisis watch. *See* Dkt. 75. But the mere fact that Anaya was placed on crisis watch does not violate the Constitution. *See Span*, 2018 WL 2944152, at *2 (collecting cases). The Court therefore grants Defendants' motion for summary judgment. Dkt. 70. The Court dismisses Anaya's due process claim against Defendant Russell along with the Eighth Amendment conditions claim for Anaya's failure to exhaust administrative remedies. The Court grants summary judgment in Defendant Page's favor on Anaya's claim that his placement on crisis watch in September 2022 violated due process. Because all claims implicated by Anaya's complaint have been resolved, final judgment will be entered consistent with this order. This case is closed.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 10, 2025